# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

LIANABEL G.N.[1],

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil No. 24-1016 (GLS)

## OPINION AND ORDER

    Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of her application for Social Security Disability Insurance benefits ("SSDI"). Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 9. The Commissioner opposed. Docket No. 14. Plaintiff replied. Docket No. 17. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 4. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED.**

## I.    Procedural Background

    Plaintiff worked as a school secretary for the Department of Education until January 2018. Tr. 73, 856.[2] On September 24, 2018, Plaintiff filed an application for SSDI claiming that, as of January 24, 2018, the following conditions limited her ability to work: fibromyalgia, diabetes, rheumatoid arthritis, major depression, peripheral neuropathy, insomnia, thyroids, low back pain, upper back pain, and retinopathy. Tr. 278, 578. Plaintiff received treatment of several doctors as evidenced by her disability report. The application was denied initially and upon reconsideration.

---

[1]    Plaintiff's last name is omitted for privacy reasons.

[2]    "Tr." refers to the transcript of the record of proceedings.

Tr. 43, 564-602. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on August 10, 2022, a hearing was held before ALJ Angel X. Viera Vargas. Tr. 69-92. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") María de León testified at the hearing. Id. On October 5, 2022, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, from January 24, 2018, through the date of the decision. Tr. 43-59. Plaintiff asked the Appeals Council to review but the request was denied on November 27, 2023, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-6. On January 11, 2024, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 9, 14, 17.

## II.     Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to

preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving she cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

B. Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based in the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence.

3

Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

### III.   Discussion
#### A. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 24, 2018, the alleged onset of disability. Tr. 45. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): degenerative disc disease, fibromyalgia, rheumatoid arthritis, bilateral knee osteoarthritis, and major depression. Id. The ALJ further found that Plaintiff had several impairments that were not severe because, considered individually, they have caused only transient or mild symptoms and limitations, are well controlled with conservative treatment approach, or are not adequately supported by the medical evidence. Tr. 46. The ALJ classified Plaintiff's diabetes mellitus, hypothyroidism, arterial hypertension, obstructive sleep apnea, bilateral carpel tunnel syndrome, migraines, thoracic spine spondylosis, and osteoarthritis of the knee as non-severe impairments. Tr. 46. The ALJ determined that Plaintiff is no longer considered obese after undergoing bariatric surgery. Tr. 46. The non-severe impairments were accounted for, along with Plaintiff's severe impairments, in determining her RFC. Id.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. The ALJ concluded that the "Paragraph B" criteria were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 47-49. Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC. Tr. 25. The ALJ stated that, in formulating the RFC, she considered all impairments, including those that were non-severe (Tr. 24-25), and that his findings regarding Plaintiff's mental functioning were also considered. The

ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), except:

> lifting, carrying, pushing and pulling 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs frequently; sitting for 6hrs in an 8hrs workday alternating to standing for 10 minutes after every 2hrs of sitting, standing for 6hrs in an 8hrs workday alternating to sitting for 10 minutes after every two hours of standing and walking for 6hrs in an 8hrs workday, alternating to sitting for 10 minutes after 2hrs of walking. She can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch occasionally, crawl occasionally. The claimant can work at unprotected heights occasionally, moving mechanical parts occasionally, and operating a motor vehicle occasionally. Mentally, she is able to interact with supervisors and coworkers frequently and the public occasionally. She is able to make simple work-related decisions while dealing with changes in work settings.

Tr. 50. The ALJ then concluded that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy, such as a marker, checker I, and router. Tr. 57-58. The ALJ found that Plaintiff was not disabled. Tr. 59.

### B. Plaintiff's Allegations of Error

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the ALJ failed to properly evaluate Plaintiff's subjective symptoms, (2) the ALJ failed to properly consider medical evidence on the record, (3) the ALJ erred by not considering Plaintiff's use of a cane, and (4) the VE's testimony supports a finding that there are insufficient jobs in the national economy for Plaintiff. The Court finds no error.

#### 1. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ did not properly evaluate her subjective symptoms. Docket No. 9 at pp. 19-21. Specifically, that the ALJ considered that Plaintiff can prepare simple meals, count change, and administer a checking account, and that Plaintiff was previously able to work despite the impairments she now alleges are disabling. The Commissioner sustains that the ALJ evaluated Plaintiff's self-reported limitations but found that they were not entirely consistent with other substantial evidence in the record. Docket No. 14 at pp. 6-8.

SSR 16–3p expressly requires that the ALJ consider an applicant's "[d]aily activities" to "evaluate the intensity, persistence, and limiting effects of an individual's symptoms." 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p, 2017 WL 5180304, at *7. Following that requirement, the ALJ stated

that Plaintiff engaged in a variety of daily activities, including preparing simple meals, counting change, and administering a checking's account. Tr. 51. As evidenced by the ALJ's extensive explanation, the ALJ considered other factors, such as medical expert assessments and objective medical findings, in support of the RFC finding. Tr. 46-57, 571-75, 586-91. The ALJ's consideration of Plaintiff's daily activities was appropriate. To be sure, the ability to accomplish certain daily tasks "does not equate to performing work that constitutes 'substantial gainful activity.'" T.L. v. Kijakazi, 2024 WL 38744, at *7 (D. Mass. Jan. 3, 2024) (quoting 20 C.F.R. § 416.920(a)(4)(i)). But given that Social Security claimants are, by definition, not working when they apply for disability benefits, an ALJ must necessarily infer whether a claimant possesses the ability to work from circumstantial evidence, including the claimant's daily activities. Coskery v. Beryhill, 892 F.3d 1, 7 (1st Cir. 2018). The ALJ did not cite Plaintiff's ability to perform activities of daily living as conclusive proof that she could work, but to show that the record did not support the limitations Plaintiff claimed. The ALJ's consideration of Plaintiff's activities of daily living was not erroneous.

Plaintiff takes exception with the ALJ's remarks that she was previously able to work despite the impairments she now alleges are disabling. Docket No. 9 at p. 20; Tr. 51. Plaintiff does not cite caselaw in support of her argument, but merely states that the onset date of her disabling conditions was January 24, 2018 and "it does not make any sense to try to deny a claim for disability benefits because a claimant was able to work prior to the alleged onset of disability." In his decision, the ALJ noted that Plaintiff had a long history of treatment for musculoskeletal conditions, which dated back to the year 2008. Tr. 51. Despite being treated for herniated discs at the lumbar spine, and radiculopathy, cervical strain, and shoulder strain, Plaintiff "was able to continue working until the alleged onset date[,] which suggests the non-disabling nature of her conditions." Id. Plaintiff's similar neuropathic symptoms and functional limitations (neck spasms, low back pain, shoulder pain, limited range of motion, lower extremity numbness, and difficulty walking), which dated back to the year 2007, did not stop her from working full time. As the Commissioner emphasized, Plaintiff needed to set forth evidence to support her claim that those impairments were disabling. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991) (at steps one through four of the sequential evaluation, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability). See also Jesse P. v. Comm'r of Soc. Sec., 2022 WL 2079080, at *8 (N.D. NY, June 9, 2022) (reports of disabling physical limitations that

date back to a decade were "difficult to reconcile with the factual reality that plaintiff continued to perform full-time, heavy-duty work as an X-ray technician" during that period).

### 2. RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "tried to discredit the evidence and opinions of [her] treating doctors," Dr. José Irizarry-Rodríguez, a rheumatologist, and Dr. Juan Rodríguez-Vélez, a psychiatrist. Docket No. 9 at pp. 20-22. In support of her argument, Plaintiff states that the ALJ should have considered that Plaintiff's treating physicians have a lengthy relationship with her, that their opinions are more persuasive than "the prior administrative medical findings," and that Dr. Irizarry-Rodríguez is more persuasive given his "advanced education and training." Id.

The Social Security defines an RFC as the most an individual can do despite his limitations. 20 C.F.R. § 404.1545. In determining an RFC, all recorded medically determinable impairments that are suffered by claimant are considered, including non-severe impairments. Id. Because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Olivera-Bahamundi v. Comm'r of Soc. Sec., 2021 WL 1177339, at *5 (D.P.R. Mar. 29, 2021) (citations omitted). The ALJ must base the determination on all relevant evidence, including plaintiff's medical record, medical opinions, and his description of his limitations. See Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723 at, *5 (D.P.R. Sept. 23, 2021); 20 C.F.R. §§ 404.1545, 404.1546.

In the instant case, the ALJ discussed in his decision the examinations, procedures, and diagnoses of Plaintiff from the alleged onset date through the date of the decision. Since January 15, 2019, rheumatologist Dr. Irizarry-Rodríguez treated Plaintiff for persistent pain in shoulders, hips, neck, back, ankles, and feet, chronic fatigue, headaches, numbness of hands and feet, weakness, and complains of memory problems, depression, and anxiety. Tr. 52. Dr. Irizarry-Rodríguez confirmed that Plaintiff has degenerative joint disease, chronic fatigue symptoms, fibromyalgia, bilateral carpel tunnel syndrome, bilateral tarsal tunnel syndrome, and obesity. He prescribed Cymbalta, Humira, Methotrexate, and Abilify initially. Tr. 53 ref. Tr. 1196-1201, 1202-23, 1500-02, 1506-22, 1523-24, 1525, 1533, 1566. On April 29, 2022, a study revealed that Plaintiff had polyarthritis. But treatment continued to be the same— Cymbalta, Humira, Methotrexate, and psychotropic medications. Tr. 1558. The ALJ noted that, despite being diagnosed with degenerative joint disease, chronic fatigue syndrome and fibromyalgia, bilateral

carpal tunnel syndrome, bilateral tarsal tunnel syndrome, and obesity, neither Dr. Irizarry-Rodríguez nor any other treating source deem Plaintiff to have limitations due to those impairments. Tr. 53 ref. 1196-1201, 1202-23, 1506-22, 1523-24, 1525, 1566. More importantly, Plaintiff's sedimentation rate and rheumatoid factor tests were negative. Tr. 869-908, 1225-46, 1319-67. The ALJ also considered the progress notes from Pro Health Clinic from January 2018 through December 2021, concerning Plaintiff's musculoskeletal conditions, which were described as normal with no muscle deformities, adequate range of motion of the spine and extremities, muscle strength 5/5 on all extremities, normal gait and station, and normal reflexes. Tr. 53 ref. Tr. 1093, 1123, 1151, 1167, 1571, 1575, 1581, 1584, 1570. The ALJ noted that Plaintiff's pain was treated with pain medications and physical therapy sessions, which she tolerated well. And that the standing and walking limitation in the RFC, which limited Plaintiff to light work, was reasonable, as it considered expected problems with prolonged standing and walking and the lower extremity pain associated to neuropathy, fibromyalgia and rheumatoid arthritis. Tr. 54.

The ALJ also considered Plaintiff's psychiatric treatment in detail. Tr. 54-56. The ALJ first acknowledged that Plaintiff had a history of consistent treatment for depression with Dr. Juan Bautista (2018-2019) and Dr. Juan Rodríguez-Vélez (since mid-2020), and from October 2019 to June 2020 in the American Psychiatric Services ("APS") clinic. On May 24, 2018, Dr. Bautista made an initial diagnosis of depressive disorder and a GAF of 55-60%. Tr. 54 ref. 1176-88, 1255-1315, 1316-18. But the ALJ noted that Plaintiff had logical and relevant thought process, was continuously oriented in all three spheres, and had adequate insight and judgment. She was consistently described as cooperative and with adequate visual contact. She had no suicidal or homicidal ideations. Id. Treatment notes from APS clinic showed that, while Plaintiff was occasionally depressed and anxious, she had appropriate behavior, logical and coherent thought process, normal impulse control, intact memory, was oriented with good judgement and had adequate insight. Tr. 54. Plaintiff was diagnosed with major depressive disorder, recurrent, severe and without psychotic features. Plaintiff has follow-up visits every three (3) months.

Plaintiff started visiting psychiatrist Dr. Rodríguez-Vélez in the year 2020. Tr. 1316-18, 1503-1505, 1552, 1559. Progress notes demonstrated that, while depressed and anxious in moderate levels, Plaintiff denied suicidal and psychotic behavior. Tr. 55. Dr. Rodríguez-Vélez diagnosed Plaintiff with recurrent depressive disorder and bereavement, uncomplicated. Dr. Rodríguez-Vélez prescribed Celexa, Elavil, and Remeron. The ALJ considered a Mental

8

Impairment Residual Functional Capacity Assessment made by Dr. Rodríguez-Vélez in July 2022 but found it unpersuasive because his findings (i.e., poor concentration skills, poor recent memory, insomnia and sadness because of her pain, depressed mood, difficulty concentration or thinking) were inconsistent with his treatment notes and those of Dr. Bautista. Tr. 55. The ALJ further considered a SSA consultive examination performed by psychologist Dr. Gerardo Cubano-Calderón and the opinions of SSA medical and psychological consultants.[3] Tr. 564-76, 577, 1189-95. The ALJ ultimately found that, although the opinion of SSA medical consultants at the reconsideration level are generally persuasive, "the evidence of record counsels some modest changes to the RFC proposed by them." Tr. 56 ("the undersigned has found greater postural with alternating positions at will and additional environmental limitations, mainly as a preventive measure"). Likewise, as to the SSA psychological consultants, the ALJ determine that "opinions were not persuasive, as additional evidence received at the hearing level, particularly the treatment notes of Dr. Batista, Dr. Rodríguez Vélez, the examination by Dr. Cubano, support a depressive disorder of moderate severity that warrants the limitations reflected in the residual functional capacity." Id.

Plaintiff seeks for the Court to rely on the opinions of Dr. José Irizarry-Rodríguez and Dr. Juan Rodríguez-Vélez. But, as explained above, the Court will not reweigh evidence already evaluated and extensively discussed by the ALJ. Olivera-Bahamundi, 2021 WL 1177339, at *6; Evangelista v. Sec'y of Health and Humans Servs., 826 F.2d 136, 144 (1st Cir. 1997). And Plaintiff has not explained or demonstrated through evidence of record how her symptoms warranted the imposition of further functional limitations than those found by the ALJ in the RFC. See Otero-Vicenty v. Comm'r of Soc. Sec., 2024 WL 1381402, at *10 (D.P.R. Mar. 31, 2024) (quotations

---

[3] Plaintiff perfunctorily argues that the 2019-2020 state-agency assessments have no probative value because "they are based on an incomplete administrative file" and the record was a supplement for the hearing before the ALJ in the year 2022. This argument is underdeveloped and thus waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). In any event, the ALJ did not merely defer to the state-agency assessments. As previously discussed, the ALJ found that the evidence in the record supported more restrictive limitations than those identified by the state-agency assessments. See Dube v. Kijakazi, 2024 WL 372841, at *1 (1st Cir. Jan. 16, 2024) (no remand warranted when ALJ assumed a higher degree of severity in limitations than does found by agency experts as no prejudice was shown by claimant).

omitted). Lastly, the ALJ was not required to give greater deference to the medical opinions of Plaintiff's treating physicians. 20 C.F.R. § 404.1520c(a).[4]

Plaintiff posits that a June 20, 2022 disability questionnaire from Dr. Irizarry-Rodríguez "was uploaded prior to the hearing [before the ALJ] but not posted in the exhibited electronic file." Docket No. 9 at pp. 22-23 ("It seems it was submitted by Dr. Irizarry but not received or entered into the record."). And that there is no evidence that the ALJ considered the document in rendering his opinion. But, at the hearing before the ALJ on August 10, 2022, the ALJ discussed the admitted exhibits and Plaintiff's counsel did not object or informed that there could be missing evidence. Tr. 71. Furthermore, when Plaintiff sought review before the Appeals Council, the Appeals Council did have Dr. Irizarry-Rodríguez's evidence, and the Appeals Council found that the "evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." Tr. 2. See Mills v. Apfel, 244 F.3d 1, 5-6 (1st Cir. 2001) (the Appeals Council is entitled to great deference when it states that the evidence in dispute does not justify modifying the ALJ decision). Plaintiff has not shown that the purported failure to consider the disability questionnaire prepared by Dr. Irizarry-Rodríguez was a serious mistake. Mills, 244 F.3d at 5-6.

### 3. Cane Limitation

Plaintiff argues that the ALJ failed to properly consider her use of a cane. Docket No. 9 at p. 22. Plaintiff sustains that regulations do not require a doctor to order the use of a cane to consider the use of a cane in making a disability determination. Id. Plaintiff's argument is erroneous. To find that a hand-held assistive device is "medically required," SSR 96-9p requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185. For an ALJ to conclude that a hand-held assistive device is "medically required," there must be (1) medical documentation establishing the need for said device to aid in walking or standing and (2) the medical documentation must also "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant

---

[4] Plaintiff posits that the ALJ "barely mentioned" the records of Plaintiff's physicians such as those of her neurologist, cardiologist, physiatrist, gastroenterologist, and hand surgeon. Docket No. 9 at p. 26. But the ALJ need not discuss every tidbit of evidence included in the record. Hur v. Barnhart, 94 F. App'x. 130, 133 (3d Cir. 2004).

information)." SSR 96-9p, at *7; Rachael Cline, Plaintiff v. Comm'r of Soc. Sec., Def., 2025 WL 850272, at *8 (N.D. Ohio, Mar. 18, 2025). If both requirements are met, the ALJ must conclude that the cane is medically necessary and consider that limitation in his decision. Simpkins v. Berryhill, 2017 WL 3821684, at *3 (E.D. Ky. Aug. 31, 2017). The ALJ noted that there was evidence that Plaintiff used a cane due to difficulty in walking but "the file [was] devoid of any document establishing it was prescribed." Tr. 53. Plaintiff does not point to any medical record that describes the reason why she needs a cane. The evidence on the record does not provide the type of information required by SSR 96-9p. The Court need not go further.

## 4. Step-Five Determination

Plaintiff challenges two aspects of step five of the sequential evaluation. Relying on the belief that the ALJ's decision was not supported by substantial evidence, Plaintiff challenges the step-five determination arguing that the hypotheticals posed were incomplete. Docket No. 9 at pp. 29-30. Additionally, Plaintiff claims that the VE's testimony does not support a finding of significant jobs in the national economy. Id.; Docket No. 17.

Plaintiff's first challenge is derivative of her RFC challenges. Because I previously addressed and rejected the challenges to Plaintiff's RFC, I need not consider whether the hypotheticals posed to the VE were lacking. Bowden v. Colvin, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("[] plaintiff argues that the hypothetical question posed to the [VE] was fatally deficient due to the deficiencies in the RFC that he assigned to the plaintiff and included in the question[.] ... I have rejected his arguments about the RFC, so this corollary argument regarding the hypothetical question must fail as well.").

Plaintiff's final challenge is more nuanced. Docket Nos. 9 at pp. 28-31; 17. She contends that, because there are insufficient appropriate jobs for her in the Puerto Rico economy, she must be deemed disabled. But this argument is clearly underdeveloped. In her initial brief, Plaintiff does not explain her position. She merely cited to the portion of the transcript where the VE talks about the number of jobs in the economy. She also did not cite to any legal authority in support of her argument. Docket No. 9 at p. 29. It was not until her reply brief that Plaintiff made arguments that lead the Court to infer that her challenge is directed at the reported number of jobs available in the Puerto Rico economy. See Docket No. 17. The Court is not required to consider arguments that have been undeveloped. See Zannino, 895 F.2d at 17. And there is good reason for this rule. The

Commissioner has been deprived of an opportunity to address the issue. That said, I will indulge Plaintiff and note the following.

The VE testified that there are three occupations in the national economy that Plaintiff could perform – marker (300,000 jobs in the national economy), checker I (35,000 jobs in the national economy), and router (52,000 jobs in the national economy). Tr. 58, 85-89. Plaintiff's attorney asked the VE whether the number of available positions throughout the United States included Puerto Rico. The VE replied that she was referring to the "national level." Tr. 90. The VE then provided the numbers of available positions in Puerto Rico: 2,500 jobs for the "marker" occupation, 253 jobs for the "checker" occupation, and 420 jobs available for the "router" occupation. Tr. 90-91. At step five, the ALJ evaluates whether the claimant's RFC combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits should be denied. 20 C.F.R. § 404.1520(g). If there are no jobs that the claimant can perform, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f). Plaintiff contends that reversal is warranted because the VE's testimony of available jobs in the national economy was insufficient to establish no disability in the step five of the sequential evaluation. She contends that the numbers that should have been used are those pertaining to the jobs available in Puerto Rico. The statute in question indicates that the "significant number of jobs" can be either regional jobs (the region where a claimant resides) or in several regions of the country (national jobs). 42 U.S.C. § 423(d)(2)(A). To be sure, the numbers provided by the VE for available jobs in Puerto Rico were not large but "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act." Dennis Abrams, Jr. v. Leland Dudek, 2025 WL 918691, at *1 n.2 (W.D. Penn. Mar. 26, 2025) (quoting Young v. Astrue, 519 Fed. Appx. 769, 772 (3d Cir. 2013). In Young, the VE testified that a person could work as toll collector, survey worker, or small products assembler, and that there were about 100 such jobs locally and 20,000 nationally. The ALJ relied on that testimony to determine that Young was not disabled. The Third Circuit held that, although there is no precise estimate for what constitutes "significant numbers" of jobs under the Social Security Act, "the testimony from the [VE] that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers." Young, 519 Fed. Appx. at 772. As such, even assuming that the number of available jobs in Puerto Rico is not significant,

the existence of thousands of jobs in the national economy was sufficient for the ALJ to conclude that there are significant number of available jobs for Plaintiff and that Plaintiff is not disabled. Id.; 42 U.S.C. § 423(d)(2)(A). See also Cruz Madera v. Saul, 2021 WL 9100419, at *15 (D.P.R. Feb. 26, 2011) (for purposes of the ALJ's analysis, "work exists in the national economy when there are a significant number of jobs in 'one or more occupations' that a claimant is able to perform.") (quoting 20 C.F.R. §§ 404.1566(b)); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs regionally is a significant number of jobs).

## IV.    Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 31st day of March 2025.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge